United States District Court
Southern District of Texas
**ENTERED**
February 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RISHARD JACOBEY DIXON, § § Plaintiff. § § v. § § COMMISSIONER OF SOCIAL § SECURITY ADMINISTRATION, § § Defendant. § | CIVIL ACTION NO. 4:22-cv-01808 |

## OPINION AND ORDER

Plaintiff Rishard Jacobey Dixon ("Dixon") seeks judicial review of an administrative decision terminating his disability benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Dixon and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[1] have both filed briefs. *See* Dkts. 18, 19. After reviewing the briefing, the record, and the applicable law, I affirm the Commissioner's decision.

## BACKGROUND

The Commissioner originally determined Dixon to be disabled on May 6, 2009, with a period of disability beginning May 25, 2006. On March 3, 2014, Dixon's disability was determined to be continuing. *See* Dkt. 12-6 at 2. At the time, Dixon was found to have a medically determinable impairment—spine disorder—that resulted in a residual functional capacity ("RFC") of being able to "to lift/carry ten pounds occasionally; stand/walk significant[ly] less than two hours and sit about six out of eight hours; alternate sit/stand periodically to relieve pain; never climb ladders[,] ropes, or scaffolds; never stoop; and occasionally climb

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

ramps/stairs, balance, kneel, crouch, and crawl." Dkt. 12-3 at 29. Because the March 2014 determination was the Commissioner's most recent favorable decision for Dixon, it is known as the comparison point decision ("CPD"). The Act requires that a claimant's case be periodically reviewed to determine whether the claimant's disability has continued. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). On April 23, 2018, a disability examiner determined that Dixon's disability had ceased. *See* Dkt. 12-6 at 14. Dixon appealed this decision. On January 4, 2021, an Administrative Law Judge ("ALJ") held a hearing. On September 1, 2021, the ALJ found that Dixon had medically improved and was no longer entitled to disability benefits. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

Once an individual becomes entitled to disability benefits, his continued entitlement to benefits must be reviewed periodically. The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved such that "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(B). In determining whether the cessation of benefits is appropriate, the ALJ must follow an eight-step sequential analysis:

> (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement of the impairment; (4) whether any medical improvement is related to the claimant's ability to work; (5) whether an exception to medical improvement applies; (6) whether the impairment is severe; (7) whether the impairment prevents the claimant from doing past relevant work; and (8) whether the impairment prevents the claimant from doing any other work.

*Trejo v. Kijakazi*, No. 4:20-cv-2808, 2022 WL 943045, at *2 n.5 (S.D. Tex. Feb. 10, 2022) (citing 20 C.F.R. § 404.1594(f)). Throughout this analysis, "the Commissioner bears the ultimate burden of proof." *Everett v. Saul*, No. 4:21-cv-

01535, 2022 WL 3719982, at *4 (S.D. Tex. Aug. 29, 2022) (citing 20 C.F.R. § 404.1594(f); *Griego v. Sullivan*, 940 F.2d 942, 944 n.1 (5th Cir. 1991)).

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Yet, even if the ALJ commits error, remand is not warranted if "[i]t is inconceivable that the ALJ would have reached a different conclusion on [the] record." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## THE ALJ'S DECISION

At Step 1, the ALJ found that Dixon had not engaged in substantial gainful activity through the date of the ALJ's decision. *See* Dkt. 12-3 at 30.

At Step 2, the ALJ found that Dixon "has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." *Id.*

At Step 3, the ALJ found that "[m]edical improvement occurred on April 23, 2018." *Id.* "Since April 23, 2018, the impairment present at the time of the CPD had decreased in medical severity to the point where [Dixon] has had the residual functional capacity to perform light work." *Id.* at 31.

At Step 4, the ALJ found that Dixon's "medical improvement is related to the ability to work because it resulted in an increase in [Dixon]'s residual functional capacity." *Id.*

Step 5 applies only if "there has been no medical improvement," or if "the medical improvement is not related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(f)(5). Because the ALJ found medical improvement, he did not discuss this step.

At Step 6, the ALJ found that Dixon's current impairments are severe, meaning his "impairments of degenerative disc disease, hypertension, and obesity . . . cause more than minimal limitation in the ability to perform basic work activities." Dkt. 12-3 at 31.

Between Step 6 and Step 7, the ALJ found that:

> Based on the impairments present since April 23, 2018, [Dixon] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, kneel, crouch, or crawl.

*Id.* at 32.

At Step 7, the ALJ found that "[Dixon] has been unable to perform past relevant work [as a material handler]." *Id.* at 36.

At Step 8, the ALJ found that "[s]ince April 23, 2018, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since April 23, 2018, the claimant has been able to perform a significant number of jobs in the national economy." *Id.* at 37. Thus, the ALJ found that "[Dixon]'s disability ended on April 23, 2018, and [he] has not become disabled again since that date." *See id.* at 38.

4

## DISCUSSION

Dixon raises several points for my review. I will address each in turn.

### A. WHETHER THE ALJ FAILED TO DEVELOP THE RECORD

Dixon first argues the ALJ did not properly develop the record and relied on stale medical opinions when determining Dixon's RFC. Specifically, Dixon contends "the ALJ's decision is not supported by substantial evidence" because the ALJ failed to consider that Dixon's "medical condition degenerated with time," and that "[a]ll of [Dixon]'s doctors diagnosed him with chronic back pain." Dkt. 18 at 16. The latter argument is not persuasive, and the former is simply untrue. The ALJ explicitly recognized that the "record showed continued reports of back pain during the relevant period." Dkt. 12-3 at 31. But the ALJ also recognized that the most recent medical evidence—which the ALJ permitted Dixon to submit after the hearing—"showed [Dixon]'s gait, motor strength, sensation, and reflexes were generally within normal limits." *Id.*

I cannot reweigh the evidence. I can only find that an ALJ's decision is unsupported by substantial evidence "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973). That is not the case here, where the ALJ expressly considered the most recent examinations in the record and found that they contradict Dixon's disability.

### B. WHETHER THE ALJ CONSIDERED ALL MEDICAL EVIDENCE

Dixon next argues that the ALJ "dismissed the intensity, frequency, and duration of [his] chronic back pain that was well documented in [his] medical records" by relying on medical records before April 18, 2018. Dkt. 18 at 17. This argument is essentially a regurgitation of the first argument, which, as discussed above, is incorrect and not persuasive. The ALJ acknowledged Dixon's complaints, but found them unsupported by the medical record and cited to specific, recent

(the most recent, in fact) medical evidence to support that conclusion. I cannot and will not reweigh the evidence.

## C.   WHETHER THE ALJ CONSIDERED ALL MEDICAL OPINIONS

Next, Dixon takes issue with the ALJ's consideration of certain medical opinions—one by Dr. Craig Billinghurst ("Dr. Billinghurst") and the other by Dr. William Culver ("Culver"). Dr. Billinghurst found there was medical improvement in Dixon's impairments since the March 2014 CPD, and that Dixon had the RFC to perform light work with additional postural limitations. *See* Dkt. 12-6 at 8, 10, 12. Meanwhile, Dr. Culver opined that Dixon cannot perform heavy household chores, and that he "should avoid repetitive lumbar bending or overhead work, mopping, sweeping, climbing ladders or stairs, working off ground and lifting greater than twenty pounds from floor to wai[s]t and forty from waist to shoulder." Dkt. 12-3 at 36.

To start, Dixon contends that the ALJ failed to discuss the supportability or consistency of Dr. Billinghurst's opinion. This is simply not true. Although the ALJ did not mention Dr. Billinghurst's name when discussing Dr. Billinghurst's opinion, he cited it and discussed why it was "supported and persuasive based on the objective findings, improvement with treatment, and activities of daily living." *Id.* (citing Exhibit 2A, which is Dr. Billinghurst's disability determination). Specifically, the ALJ noted that

> examinations during the relevant period showed [Dixon's] gait, motor strength, sensation, and reflexes were generally within normal limits . . . [Dixon] reported improved functionality, quality of life, and analgesic control with opioid medication therapy from June 2020 to June 2021. His primary form of exercise was weightlifting one-two days per week. He was able to bathe and dress himself, clean the house, cook meals, live independently, ride public transportation, drive a car, etc.

*Id.* (citations omitted). Accordingly, the ALJ properly articulated his consideration of Dr. Billinghurst's opinion.

6

Next, Dixon argues the ALJ's "holding that Dr. Culver's opinion is partially persuasive is not supported by substantial evidence." Dkt. 18 at 22. Specifically, Dixon contends the ALJ found Dr. Culver's opinion—which found that Dixon should not engage in repetitive lumbar bending—only partially persuasive based on medical notes from Dixon's primary care provider. Dixon argues that his primary care provider "was not the pain specialist and did [not] perform any type of [range of motion] test on [Dixon]'s lumbar spine." *Id*. As best I can tell, Dixon believes the ALJ should have found Dr. Culver's opinion entirely persuasive. But the ALJ considered Dr. Culver's opinion and found that "objective findings, improvement with treatment, and activities of daily living" rendered it only partially persuasive. Dkt. 12-3 at 36 (citing the most recent medical evidence as to objective findings and improvement with treatment). The ALJ cited specific parts of the record in this analysis, including the most recent medical evidence from Dixon's pain treatment specialists. This is substantial evidence supporting the ALJ's analysis of Dr. Culver's opinion.

## D.   WHETHER THE ALJ PROPERLY CONSIDERED LISTING 1.15

Dixon next argues the ALJ failed to consider all the evidence in the record relating to Listing 1.15.[2] I will assume, without deciding, that this is true. Even so,

---

[2] **1.15 *Disorders of the skeletal spine resulting in compromise of a nerve root(s)*** (see 1.00F), documented by A, B, C, *and* D:
   **A.** Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):
      1. Pain; or
      2. Paresthesia; or
      3. Muscle fatigue.
   AND
   **B.** Radicular distribution of neurological *signs* present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
      1. Muscle weakness; and
      2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
      3. Sensory changes evidenced by:

7

remand is not warranted if "[i]t is inconceivable that the ALJ would have reached a different conclusion on [the] record." *Frank*, 326 F.3d at 622. In other words, Dixon must show that the outcome would have been different if the ALJ had considered all the evidence relating to Listing 1.15—that he, in fact, satisfies Listing 1.15's requirements. But, as the Commissioner notes, Dixon "has not offered specific medical evidence to show he meets the criteria for Listing 1.15." Dkt. 19 at 8. Dixon always bears the burden of establishing that his impairment meets or equals a listed impairment. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) ("For the most part, the claimant bears the burden of proving his disability. . . . [A] claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations.").

---

        a. Decreased sensation; or
        b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*
    4. Decreased deep tendon reflexes.
AND
**C.** Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.
AND
**D.** Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:
    1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
    2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
    3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

Dixon has not carried this burden. Accordingly, any error by the ALJ in not articulating each piece of evidence pertaining to Listing 1.15 was harmless.

**E.     WHETHER THE RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Dixon's final point of contention is that if the ALJ "had considered the severity of [Dixon's] chronic back pain, [Dixon] would have been found disable[d]." Dkt. 18 at 24. I agree with Dixon that if the ALJ had found that Dixon cannot bend or needed to be absent from work at least twice per month, it would have necessitated a finding of disability. But the ALJ considered all the evidence and found that Dixon's subjective complaints were not supported by the evidence, including the most recent medical evidence that the ALJ allowed Dixon to submit after the hearing. Essentially, Dixon is asking me to reach a different conclusion than the ALJ—to reweigh the evidence. I cannot do this. "Conflicts in the evidence are for the Commissioner to resolve." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The ALJ resolved those conflicts and found Dixon not disabled. I have reviewed the record below and can find no legal error or lack of substantial evidence to overturn that decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is affirmed. This case is dismissed.

SIGNED this 12th day of February 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE